**UNITED STATES DISTRICT COURT**
for the
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **STEPHEN FERGUSON** | ) **CASE NO.** |
| 345 East 7th St., Unit 1409 | ) |
| Cincinnati, OH 45202 | ) |
| | ) **JUDGE** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **HONEYWELL INTERNATIONAL,** | ) **COMPLAINT** |
| **INC.,** a Delaware corporation, | ) |
| 7901 Innovation Way | ) |
| Mason, OH 45040 | ) |

1. Hostile Work Environment – 42 U.S.C. § 2000e
2. Hostile Work Environment – 42 U.S.C. § 2000e
3. Hostile Work Environment – Ohio Rev. Code § 4112
4. Racial Discrimination - 42 U.S.C. § 2000e
5. Racial Discrimination – Ohio Rev. Code § 4112
6. Sexual Orientation Discrimination - 42 U.S.C. § 2000e
7. Retaliation
8. Retaliation - 42 U.S.C. § 2000e
9. Retaliation – Ohio Rev. Code § 4112
10. Wrongful Termination in Violation of Public Policy
11. Aiding and Abetting
12. Aiding and Abetting

*Jury Demand Endorsed Hereon*

and

**ASHLEY DUNHAM**
10859 Wolf Ave., NE
Hartville, OH 44632

and

**LYDIA CAMPBELL**
48 Hillsdale Ave.
Cincinnati, OH 45216

and

**JOHN/JANE DOES 1-5**

and

**XYC Corporations 1-5**

**Defendants.**

Now comes Plaintiff, by and through undersigned counsel, and for his Complaint alleges as follows:

## INTRODUCTION

1.      Plaintiff, Stephen Ferguson, a Black male who identifies as LGBTQIA+, brings this action to challenge Defendants' discriminatory and retaliatory actions in subjecting him to different terms and conditions of employment, issuing unwarranted discipline, and in terminating his employment as Advanced Project Manager, in creating an unlawful hostile work evironment.

2.      Plaintiff was issued a pre-Performance Improvement Plan ("pre-PIP") after raising concerns to his manager, Ashley Dunham, and objecting to her directives that would have resulted in Honeywell International, Inc. ("Honeywell") making a false financial representation concerning a project.  The pre-Pip was also issued after Plaintiff contacted Honeywell's Access Integrity Helpline raising concerns of compliance and integrity issues as a result of Dunham's and Lydia Campbell's directives.

3.      Plaintiff thereafter raised concerns on multiple occasions complaining that the issuance of the pre-PIP was retaliatory in nature.  Plaintiff also expressed concerns that he was being disparately treated on account of his race and sexual orientation and was subjected to a hostile work environment.

4.      Defendants subjected Plaintiff to discrimination and retaliated against Plaintiff for participating in protected activity by, among other things, issuing the pre-PIP, creating a hostile work environment, subjecting Plaintiff to different terms and conditions of employment, and ultimately terminating his employment.

## JURISDICTION AND VENUE

5.      One or more of Plaintiff's claims arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.  This Court has jurisdiction over this action pursuant to 42

U.S.C. § 2000e5(f), 28 U.S.C. 1331 and 1343(a)(4). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims asserted under the Ohio Rev. Code § 4112, et seq., and Ohio common law.

6. Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and 28 U.S.C. § 1391(b) and (c). Plaintiff's claims arose in the Southern District of Ohio. Plaintiff resides and, at all relevant times, Plaintiff was employed by Honeywell to perform work in the Southern District of Ohio. The acts complained of herein that give rise to the claims alleged occurred in the Southern District of Ohio. One or more of the Defendants regularly conducts business in the Southern District of Ohio. One or more of the unlawful employment practices was committed within the Southern District of Ohio, and some or all of the employment records relevant to such unlawful conduct are maintained or administered in this District.

## PARTIES

7. Plaintiff, Black male who identifies as LGBTQIA+, resides in Cincinnati, Ohio. Plaintiff is a citizen of Ohio. Plaintiff is an "employee" as defined under 42 U.S.C. § 2000e(f) and within the meaning of O.R.C. § 4112.01.

8. Defendant Honeywell is a Delaware corporation with its principal place business in Charlotte, North Carolina and regularly conducts business in Ohio, including within this District. Defendant Honeywell employed Plaintiff at its facility located in Mason, Ohio. Defendant Honeywell is an "employer" as defined under 42 U.S.C. § 2000e(f) and within the meaning of O.R.C. § 4112.01.

9. Defendant Ashley Dunham is an individual currently residing in Ohio and is a citizen of Ohio. In her capacity as Engineering Manager with Honeywell, Dunham regularly conducts business in Ohio, including within this District.

3

10.     Defendant Lydia Campbell is an individual currently residing in Ohio and is a citizen of Ohio.  In her capacity as Director of Engineering with Honeywell, Campbell regularly conducts business in Ohio, including within this District.

11.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants John/Jane Does 1 through 5 and XYZ Corporations 1 through 5, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint by inserting the true names and capacities of each such Defendants, with appropriate charging allegations, when they are ascertained.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as John/Jane Doe or XYZ Corporation is responsible in some manner for the injuries suffered by Plaintiff and for damages proximately caused by the conduct of each such Defendant or Defendants as herein alleged.

## ADMINISTRATIVE EXHAUSTION

12.     Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

13.     Plaintiff timely filed a charge of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") against Honeywell for the wrongful acts alleged herein under Title VII and O.R.C. § 4112, et seq.  The EEOC issued a right-to-sue letter dated March 15, 2024 which was received by Plaintiff on March 18, 2024 (see, Exhibit 1 attached hereto).

14.     Plaintiff commenced this action in a timely manner after receiving the right-to-sue letter from the EEOC.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15.     On or about June 20, 2022, Plaintiff was hired by Honeywell as an Advanced

Project Manager.

16.     Plaintiff excelled in his role with Honeywell as demonstrated by Plaintiff's 2022 performance review.

17.     Plaintiff was one member of the team working on project 92902 ("Project"). On May 25, 2023, Dunham, Plaintiff's manager, directed Plaintiff to place cannibalized revenue in the PFAT for the Project which she directed Plaintiff to include "the revenue for the entire shoe sorter."

18.     In response, Plaintiff raised concerns about Dunham's directives and advised Dunham via email dated May 25, 2023 as follows:

> I am happy to do as you directed. However, I must make you aware ... VE projects have no revenue. There is no revenue associated with project 92902. In addition we do not sell drive and idlers by themselves; we sell them as complete units (i.e., drive, idler, and intermediate). Putting in the entirety of the shoe sorter revenue into the VE project for the Drive and Idler (92902) as a representation for just the Drive and Idler would, in my view, not be a true representation for the project finances. I would not recommend doing this.
>
> In addition, the project would have a negative NPV if we are stating that we are saving the exact cost of the drive and idler over the required 2 year period (possibly due to changing labor rates and inflation. We are indeed stating that we are saving the exact cost of the project over the required 2 year period.

19.     On May 30, 2023, Plaintiff contacted Honeywell's Access Integrity Helpline via email raising concerns of compliance and integrity issues which violated Honeywell's own core values based upon the directives from Dunham and Campbell, Plaintiff's Director. Plaintiff expressed his concern "with directives that were given to potentially misrepresent project financials, despite the concerns [he] voiced and [his] feelings of discomfort..."

20.     Dunham and Campbell issued the pre-PIP to Plaintiff a little more than a week after his email to Dunham and only days after his complaints to the Access Integrity Helpline. The substance of the pre-PIP related to the issues Plaintiff raised about the Project to Dunham and

Campbell and the directives he received that resulted in his complaints about compliance and integrity issues.

21.     In response to the pre-PIP, Plaintiff raised concerns that the pre-PIP was retaliatory in nature.  In a letter sent via email to Elena Takla, Honeywell's Human Resources Business Partner, on June 5, 2023, Mr. Ferguson advised, in part:

> I believe I am being subjected to a threatening and retaliatory work environment related to my actions to defend the integrity of the firm's well-established practices demanded by vital stakeholders. ... I presume my alleged underperformance lines up with the nature of the integrity and compliance concerns I raised recently.
>
> I do not know how this correspondence will be received, and the current environment in which I operate leaves me with much fear and trepidation of the potential outcome, but I am hopeful you may express willingness to hear my concerns and direct actions in a manner that is consistent with Honeywell's mission and values.

22.     That same day, via email to Jennifer Reilly, Honeywell's Vice President, Human Resources, Plaintiff also raised concerns about the retaliatory nature of the issuance of the pre-PIP and complained of racial and sexual orientation discrimination to which he was subjected.  Plaintiff's email stated, in part:

> I was served "pre-PIP" by Lydia Campbell (PMO Director), Ashley Dunham (PMO Manager), and Elena Takla (Sr. HR Generalist) on Friday, 6/2/23, at 4:30 PM via Teams call.  This action was unexpected and concerning in its proximity to an Access Integrity Helpline investigation I initiated on Tuesday, 5/30/23.  Since service of the pre-PIP, the nature of the working relationship with my manager, Ashley, has changed markedly and negatively.  For example, scheduled time away that would have previously been approved through an established protocol since joining the team has changed in an evidently restrictive way.
>
> I believe I am being subjected to a threatening and retaliatory work environment related to my actions to defend the integrity of the firm's well-established practices demanded by vital stakeholders.  Further, I worry my voice will not be heard, as is often the case with people of my race and orientation.

> I do not know how this correspondence will be received, and the current environment in which I operate leaves me with much fear and trepidation of the potential outcome, but I am hopeful you may express willingness to hear my concerns and direct actions in a manner that is consistent with Honeywell's mission and values.

23.     Plaintiff was thereafter contacted by Brian McGarvey, Honeywell's Vice President, Human Resources, to ostensibly discuss Plaintiff's concerns about the retaliatory conduct and his racial and sexual orientation discrimination claims.   McGarvey did not see any urgency in addressing Plaintiff's concerns as McGarvey scheduled a meeting a week later -- June 12, 2023. Plaintiff advised McGarvey that Plaintiff would be out of the country on June 12, 2023 for a long-planned vacation but, appreciating the dire and urgent nature of his concerns, Plaintiff advised that he was willing to take time out of his vacation and offered to attend the meeting.   Plaintiff also offered to meet prior to leaving for vacation.   McGarvey never responded regarding the proposed meeting and, thus, the meeting never took place, and the investigation was not undertaken.

24.     After returning from his planned vacation and after never receiving any further contact from McGarvey, Plaintiff sent an email to Reilly on July 3, 2023 wherein he again raised concerns of retaliation and racial and sexual orientation discrimination.   Plaintiff stated, in pertinent part:

> Brian McGarvey reached out to me after your introduction, but it seems that I was not able to setup a time to discuss anything with him.   There seems to have been a misunderstanding in our communication and I have not heard from him in some time.   As such, I wanted to follow up with you.
>
> Since service of the pre-PIP, the nature of the working relationship with my manager, Ashley Dunham, has changed markedly and negatively.   For example, scheduled time away that would have previously been approved through an established protocol since joining the team has changed in an evidently restrictive way.   An example of this occurred on 6/2/23 when Ashley, called attention to time that I had blocked off for a physician's appointment on my calendar; this email unexpectedly involved HR.   I have not seen this happen with any other team member of my team since I

arrived at Honeywell. Indeed, there have been OOO calendar invites for a "Hair Appointment" from Devon Riddle on 6/16/23 and a short notice OOO invite from Heather Beale initiated on 6/30/23 for 7/7/23. Ashley has also taken short notice leave for various family matters that has affected previously scheduled meetings (e.g., cancellation of a PMO meeting last minute on 6/26/23). I was also recently questioned by Ashley about an infrequent change to my WFH schedule which was made well in advance of the occurrence. This excess scrutiny had not occurred prior to my submission of an Access Integrity Helpline complaint. I find this strange as I heard Devon mention to Ashley and Heather on 6/26/23 that she changes her WFH schedule whenever there is karaoke closer to downtown Cincinnati; Heather went on to confirm that this was on at least a monthly basis.

Furthermore, I happened to hear a conversation on 6/29/23 between my manager and two of my coworkers where they disparaged our newest Co-op's work ethic. They described her as being more interested in having others do her work for her rather than do it herself. They continued to make comments focusing on it being a challenge to terminate a Co-op …. The conversation continued by discussing that it is "much easier to fire an employee. You just put them on a PIP and then say that you tried everything." This was truly disheartening because I was served with a "pre-PIP" on 6/2/23 for behaviors that are relevant to my Access Integrity Helpline complaint. …

I believe that I am experiencing retaliation following the Access Integrity Helpline complaint I submitted on 5/30/23 and that my LGBTQIA+ identity and familial situation are factors in my time being overly scrutinized. This is supported by the "pre-PIP" I was served referencing behaviors relevant to my compliance complaint, the new trend of having my work schedule overly scrutinized despite other members of the team requesting like changes, and the conversation I heard in which Sheronda's work ethic was disparaged. I have been the only African American on the team for some time. This changed only recently when another African American joined the group as a Co-op. The swiftness with which Ashley and other team members developed a negative opinion about Sheronda's work ethic after her being in such a large, complex organization as Honeywell for only a short time is concerning. Also, I do not have children and I am the only openly LGBTQIA+ individual on the team. This might cause others to think that any physician appointments or adjustments to my schedule are unwarranted and unjustified. I do not believe this is right. This has left me deeply troubled and concerned about the impact this may have on my career progression and overall well-being. As an employee who has always strived to uphold the company's values, I find myself feeling demoralized and alienated due to these occurrences.

25.     Rather than investigate Plaintiff's concerns of retaliation and discrimination, Honeywell followed the playbook Dunham described in the conversation Ferguson overheard. Ferguson was placed on a pre-PIP and then a little more than a month later, Ferguson was advised on July 12, 2023 that his employment was being terminated effective July 14, 2023.

## FIRST CLAIM FOR RELIEF
### *Hostile Work Environment – 42 U.S.C. § 2000e*
### *(Against Defendant Honeywell)*

26.     Plaintiff re-alleges Paragraphs 1 through 25 as if fully rewritten herein.

27.     Dunham and Campbell engaged in inappropriate and unwelcome conduct based upon Plaintiff's race.

28.     Dunham's and Campbell's egregious harassing conduct was so severe and pervasive that it affected Plaintiff's terms and conditions of employment as it created a work environment that interfered with Plaintiff's ability to perform his role and resulted in retaliatory action.

29.     At the time of the harassing conduct, Dunham and Campbell were Plaintiff's supervisors.

30.     Honeywell was aware of the harassment based upon Plaintiff's repeated complaints.

31.     Honeywell failed to conduct an investigation and failed to take immediate and appropriate corrective action to ensure the harassing conduct ceased.

32.     The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

33.     As a direct and proximate result of Honeywell's unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering,

emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

## SECOND CLAIM FOR RELIEF
### *Hostile Work Environment - 42 U.S.C. § 2000e*
### *(Against Defendant Honeywell)*

34.     Plaintiff re-alleges Paragraphs 1 through 33 as if fully rewritten herein.

35.     Dunham and Campbell engaged in inappropriate and unwelcome conduct based upon Plaintiff's sexual orientation.

36.     Dunham's and Campbell's egregious harassing conduct was so severe and pervasive that it affected Plaintiff's terms and conditions of employment as it created a work environment that interfered with Plaintiff's ability to perform his role and resulted in retaliatory action.

37.     At the time of the harassing conduct, Dunham and Campbell were Plaintiff's supervisors.

38.     Honeywell was aware of the harassment based upon Plaintiff's repeated complaints.

39.     Honeywell failed to conduct an investigation and failed to take immediate and appropriate corrective action to ensure the harassing conduct ceased.

40.     The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

41.     As a direct and proximate result of Honeywell's unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

### THIRD CLAIM FOR RELIEF
*Hostile Work Environment – Ohio Rev. Code § 4112*
*(Against Defendant Honeywell)*

42.     Plaintiff re-alleges Paragraphs 1 through 41 as if fully rewritten herein.

43.     Dunham and Campbell engaged in inappropriate and unwelcome conduct based upon Plaintiff's race.

44.     Dunham's and Campbell's egregious harassing conduct was so severe and pervasive that it affected Plaintiff's terms and conditions of employment as it created a work environment that interfered with Plaintiff's ability to perform his role and resulted in retaliatory action.

45.     At the time of the harassing conduct, Dunham and Campbell were Plaintiff's supervisors.

46.     Honeywell was aware of the harassment based upon Plaintiff's repeated complaints.

47.     Honeywell failed to conduct an investigation and failed to take immediate and appropriate corrective action to ensure the harassing conduct ceased.

48.     The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

49.     As a direct and proximate result of Honeywell's unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

### FOURTH CLAIM FOR RELIEF
*Racial Discrimination – 42 U.S.C. §2000e*
*(Against Defendant Honeywell)*

11

50.     Plaintiff re-alleges Paragraphs 1 through 49 as if fully rewritten herein.

51.     Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (42 U.S.C. § 2000e), prohibits discrimination in the workplace by an employer on the basis of a person's race.

52.     Defendant Honeywell intentionally discriminated against Plaintiff on the basis of his race by subjecting Plaintiff to different terms and conditions of employment than those employees outside his protected class by, among things, overly scrutinizing Plaintiff, and not affording Plaintiff the same accommodations to his schedule.

53.     In addition, Plaintiff was subjected to an adverse employment action by being subjected to the unwarranted pre-PIP and ultimately discharge.

54.     Upon information and belief, Plaintiff's position was filled by an individual outside Plaintiff's protected class.

55.     Honeywell's discriminatory actions or practices described herein have denied Plaintiff his position at Honeywell and compensation to which he is entitled, including loss of past and future wages and other job benefits, and has caused Plaintiff to suffer humiliation, embarrassment, and emotional distress.

56.     This intentional discrimination was actively engaged in by and/or ratified by managing agents of Honeywell.

57.     The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

58.     Plaintiff requests relief as provided in the Prayer for Relief below.

**FIFTH CLAIM FOR RELIEF**
*Racial Discrimination – Ohio Rev. Code § 4112*

12

**(Against Defendant Honeywell)**

59.     Plaintiff re-alleges Paragraphs 1 through 58 as if fully rewritten herein.

60.     Ohio Rev. Code § 4112, prohibits discrimination in the workplace by an employer on the basis of a person's race.

61.     Defendant Honeywell intentionally discriminated against Plaintiff on the basis of his race by subjecting Plaintiff to different terms and conditions of employment than those employees outside his protected class by, among things, overly scrutinizing Plaintiff, and not affording Plaintiff the same accommodations to his schedule.

62.     In addition, Plaintiff was subjected to an adverse employment action by being subjected to the unwarranted pre-PIP and ultimately discharge.

63.     Upon information and belief, Plaintiff's position was filled by an individual outside Plaintiff's protected class.

64.     Honeywell's discriminatory actions or practices described herein have denied Plaintiff his position at Honeywell and compensation to which he is entitled, including loss of past and future wages and other job benefits, and has caused Plaintiff to suffer humiliation, embarrassment, and emotional distress.

65.     This intentional discrimination was actively engaged in by and/or ratified by managing agents of Honeywell.

66.     The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

67.     Plaintiff requests relief as provided in the Prayer for Relief below.

**SIXTH CLAIM FOR RELIEF**
*Sexual Orientation Discrimination - 42 U.S.C. § 2000e*

*(Against Defendant Honeywell)*

68.    Plaintiff re-alleges Paragraphs 1 through 67 as if fully rewritten herein.

69.    Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (42 U.S.C. § 2000e), prohibits discrimination in the workplace by an employer on the basis of a person's sexual orientation.

70.    Defendant Honeywell intentionally discriminated against Plaintiff on the basis of his sexual orientation by subjecting Plaintiff to different terms and conditions of employment than those employees outside his protected class by, among things, overly scrutinizing Plaintiff, and not affording Plaintiff the same accommodations to his schedule.

71.    In addition, Plaintiff was subjected to an adverse employment action by being subjected to the unwarranted pre-PIP and ultimately discharge.

72.    Upon information and belief, Plaintiff's position was filled by an individual outside Plaintiff's protected class.

73.    Honeywell's discriminatory actions or practices described herein have denied Plaintiff his position at Honeywell and compensation to which he is entitled, including loss of past and future wages and other job benefits, and has caused Plaintiff to suffer humiliation, embarrassment, and emotional distress.

74.    This intentional discrimination was actively engaged in by and/or ratified by managing agents of Honeywell.

75.    The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

76.    Plaintiff requests relief as provided in the Prayer for Relief below.

## SEVENTH CLAIM FOR RELIEF
### *Retaliation*
### *(Against Defendant Honeywell)*

77.    Plaintiff re-alleges Paragraphs 1 through 76 as if fully rewritten herein.

78.    Plaintiff engaged in protected activity by opposing practices of Honeywell that he reasonably and in good faith believed to be financial misrepresentation that would violate Honeywell's own internal compliance procedures and constitute a violation of law.

79.    Honeywell was aware of Plaintiff's engagement in this protected activity.

80.    Honeywell failed to commence an investigation into Plaintiff's complaints.

81.    Honeywell engaged in retaliatory conduct against Plaintiff by, among other things, issuing the unwarranted pre-PIP, overly scrutinizing Plaintiff, not affording Plaintiff the same accommodations, subjecting Plaintiff to different terms and conditions of employment, and ultimately discharging Plaintiff.

82.    This retaliation was actively engaged in by and/or ratified by managing agents of Honeywell.

83.    The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

84.    Plaintiff requests relief as provided in the Prayer for Relief below.

## EIGHTH CLAIM FOR RELIEF
### *Retaliation in Violation of Title VII*
### *(Against Defendant Honeywell)*

85.    Plaintiff re-alleges Paragraphs 1 through 84 as if fully rewritten herein.

86.    Plaintiff engaged in protected activity by opposing practices of Honeywell that he reasonably and in good faith believed to be discriminatory and a violation of law.

87.     Honeywell was aware of Plaintiff's engagement in this protected activity.

88.     Honeywell failed to commence a thorough and complete investigation into Plaintiff's complaints.

89.     Honeywell engaged in retaliatory conduct against Plaintiff by, among other things, issuing the unwarranted pre-PIP, overly scrutinizing Plaintiff, not affording Plaintiff the same accommodations, subjecting Plaintiff to different terms and conditions of employment, and ultimately discharging Plaintiff.

90.     This retaliation was actively engaged in by and/or ratified by managing agents of Honeywell.

91.     The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

92.     Plaintiff requests relief as provided in the Prayer for Relief below.

### NINTH CLAIM FOR RELIEF
### *Retaliation in Violation of Ohio Rev. Code § 4112*
### *(Against Defendant Honeywell)*

93.     Plaintiff re-alleges Paragraphs 1 through 92 as if fully rewritten herein.

94.     Plaintiff engaged in protected activity by opposing practices of Honeywell that he reasonably and in good faith believed to be discriminatory and a violation of law.

95.     Honeywell was aware of Plaintiff's engagement in this protected activity.

96.     Honeywell failed to commence a thorough and complete investigation into Plaintiff's complaints.

97.     Honeywell engaged in retaliatory conduct against Plaintiff by, among other things, issuing the unwarranted pre-PIP, overly scrutinizing Plaintiff, not affording Plaintiff the same

accommodations, subjecting Plaintiff to different terms and conditions of employment, and ultimately discharging Plaintiff.

98.     This retaliation was actively engaged in by and/or ratified by managing agents of Honeywell.

99.     The conduct of Honeywell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

100.     Plaintiff requests relief as provided in the Prayer for Relief below.

**TENTH CLAIM FOR RELIEF**
***Wrongful Termination in Violation of Public Policy***
***(Against Defendant Honeywell)***

101.     Plaintiff re-alleges Paragraphs 1 through 100 as if fully rewritten herein.

102.     The foregoing allegations implicate well-recognized public policies in Ohio including but not limited to the public policy reflected in Ohio's anti-discrimination statute, R.C. 4112, *et seq*.

103.     Honeywell's actions in discriminating against Plaintiff on the basis of his race, and in retaliating against Plaintiff for engaging in protected activity by, among other things, issuing the unwarranted pre-PIP, subjecting Plaintiff to different terms and conditions of employment, and ultimately discharging Plaintiff, jeopardizes the well-established public policies.

104.     There is a causal connection between Plaintiff's race and/or participation in the protected activity and Honeywell's issuance of the unwarranted pre-PIP, subjecting Plaintiff to different terms and conditions of employment, and discharging Plaintiff as Honeywell's actions were motivated by such factors.

105.     Honeywell lacked an overriding business justification for the discriminatory and

17

retaliatory treatment of Plaintiff.

106. Honeywell's actions were intentional, willful, reckless, and malicious.

107. As a direct and proximate result of Honeywell's unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

108. Plaintiff requests relief as provided in the Prayer for Relief below.

**ELEVENTH CLAIM FOR RELIEF**
*Aiding and Abetting*
*(Against Defendant Dunham)*

109. Plaintiff re-alleges Paragraphs 1 through 108 as if fully rewritten herein.

110. Dunham directly or indirectly committed the unlawful discriminatory and retaliatory acts detailed herein, including racial discrimination, hostile work environment, and retaliation.

111. Dunham aided and abetted the other Defendants in the commission of the discriminatory and retaliatory practices described herein, including hostile work environment, racial discrimination, and retaliation.

112. The conduct of Dunham was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

113. As a direct and proximate result of Dunham's unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other

privileges and conditions of employment.

114.    Plaintiff requests relief as provided in the Prayer for Relief below.

## TWELFTH CLAIM FOR RELIEF
### *Aiding and Abetting*
### *(Against Defendant Campbell)*

115.    Plaintiff re-alleges Paragraphs 1 through 114 as if fully rewritten herein.

116.    Campbell directly or indirectly committed the unlawful discriminatory and retaliatory acts detailed herein, including racial discrimination, hostile work environment, and retaliation.

117.    Campbell aided and abetted the other Defendants in the commission of the discriminatory and retaliatory practices described herein, including hostile work environment, racial discrimination, and retaliation.

118.    The conduct of Campbell was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on Plaintiff, and thereby justifies the imposition of general, special, and punitive damages.

119.    As a direct and proximate result of Campbell's unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

120.    Plaintiff requests relief as provided in the Prayer for Relief below.

WHEREFORE, Plaintiff prays for the following relief:

A.    All damages that Plaintiff has sustained as a result of Defendants' conduct, including, but not limited to, past and future economic and non-economic compensatory damages,

back pay, front pay, pain and suffering, emotional distress, lost benefits, promotion, punitive damages, interest, attorney fees, expert fees, costs, pre-judgment interest, and post-judgment interest;

B.     Exemplary and punitive damages in an amount commensurate with each Defendants' ability to pay and to deter future conduct;

C.     A preliminary and permanent injunction against each Defendant and its directors, officers, owners, agents, successors, employees, and representatives, and any and all person acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

D.     A declaratory judgment that the practices complained of in this complaint are unlawful and violate 42 U.S.C. § 2000€, et. Seq., Title VII of the Civil Rights Act of 1964, and Ohio Rev. Code § 4112, et seq.;

E.     Reinstatement with an adjustment to Plaintiff's wage rate and benefits to the level which he would be enjoying but for one or more of Defendants' discriminatory and retaliatory practices;

F.     Costs incurred, including reasonable attorney fees, to the extent allowed by law;

G.     Pre-judgment interest, and post-judgment interest, as provided by law;

H.     Any and all remedies available under R.C. 4112, et seq., including, but not limited to, past and future economic and non-economic compensatory damages in excess of $75,000, back pay, front pay, pain and suffering, emotional distress, lost benefits, promotion, punitive damages, interest, attorney fees, expert fees, costs, pre-judgment interest, and post-judgment interest

I.     Any and all remedies available under Ohio common law, including, but not limited to, past and future economic and non-economic damages in excess of $75,000, back pay, front pay,

20

pain and suffering, emotional distress, lost benefits, promotion, punitive damages, interest, attorney

fees, expert fees, costs, pre-judgment interest, and post-judgment interest; and

     J.     For such other and further relief as the Court deems necessary, just and proper.

Respectfully submitted,

TODD M. JACKETT (0076650)
NAGER, ROMAINE & SCHNEIBERG CO. L.P.A.
27730 Euclid Avenue
Cleveland, Ohio 44132
tjackett@nrsinjurylaw.com
(216) 289-4740
(216) 289-4743 (fax)
*Attorney for Plaintiff*
*Stephan Ferguson*

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of the within action.

TODD M. JACKETT (0076650)
NAGER, ROMAINE & SCHNEIBERG CO. L.P.A.
*Attorney for Plaintiff,*
*Stephen Ferguson*

21

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Indianapolis District Office**
115 W. Washington St., South Tower Suite 600
Indianapolis, IN 46204
(463) 999-1240
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/15/2024

To: Stephen Ferguson
345 E 7th Street, Unit 1409
Cincinnati, OH 45202

Charge No: 22A-2024-00708

EEOC Representative:        Jeremy Sells
State, Local & Tribal Coordinator
(463) 999-1161

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Michelle Eisele  03/15/2024
Michelle Eisele
District Director

Please retain this notice for your records.

cc: On following page

